In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 13-2914

CHRIS CABRAL and NANCY TARSITANO,

*Plaintiffs-Appellees*,

*v.*

CITY OF EVANSVILLE, INDIANA,

*Defendant*,

APPEAL OF: WEST SIDE CHRISTIAN CHURCH,

*Intervenor-Appellant*.

———————————

Appeal from the United States District Court for the
Southern District of Indiana, Evansville Division.
No. 13-CV-139 — **Sarah Evans Barker**, *Judge*.

———————————

ARGUED FEBRUARY 18, 2014 — DECIDED JUNE 25, 2014

———————————

Before ROVNER, WILLIAMS, and TINDER, *Circuit Judges*.

WILLIAMS, *Circuit Judge*. Seeking a permit, the West Side Christian Church ("West Side") applied to the City of Evansville, Indiana, to set up its "Cross the River" display, which consisted of thirty-one, six-feet tall decorated crosses

on four blocks of the City's public Riverfront. After Evansville approved the application, residents Chris Cabral and Nancy Tarsitano filed suit against Evansville seeking an injunction to stop the display from being erected, claiming that it violated their First Amendment rights. The district court agreed and ordered the City permanently enjoined from permitting the erection of West Side's display on the Riverfront. Here, the City does not appeal, but West Side, which was an intervenor in the district court action, does. We need not reach the merits of West Side's arguments, however, because West Side does not have standing to bring the appeal. We cannot redress any injury West Side might have suffered because Evansville is not party to this appeal and could prohibit the display's erection regardless of any order we issue. And, any First Amendment injury West Side might have suffered from the injunction was not fairly traceable to, or caused by, Evansville. Since West Side does not have standing, we dismiss the appeal.

## I. BACKGROUND

On April 30, 2013, West Side submitted a "Right-Of-Way" permit application to the Evansville City Engineer's Office seeking permission to erect thirty-one plastic crosses on the Riverfront. The Riverfront is a public area located in Evansville's downtown overlooking the Ohio River and is approximately a mile and a half in length, with a widened sidewalk. Evansville has in the past approved public displays on the Riverfront, including carousel horse, fish and butterfly sculptures, among other artwork.

West Side's permit originally sought to erect crosses that were six feet tall, nearly four feet wide and decorated by children attending Bible school with the words "Jesus Saves"

on them. The crosses were going to be placed on a four-block stretch of public sidewalk.

Evansville's legal counsel opined that the display could not contain the language "Jesus Saves" without running afoul of the City municipal code regarding "First Amendment signs." But he suggested that the crosses could be displayed without the writing if the City's Board of Public Works (the "Board") approved the display, which it eventually did. The Board also required a disclaimer at either end of the four blocks that would read: "The City of Evansville does not endorse the display or its message. The display is sponsored and funded by a private entity." Though the precise location of the crosses was never determined, there were three proposals in place, all of which planned to put the display on a four-block stretch of the public Riverfront between August 4-18, 2013.

Before the crosses went up, Cabral and Tarsitano filed their complaint against Evansville and a motion for a preliminary injunction on June 25, 2013, challenging the display as violating the Establishment Clause. West Side filed its motion to intervene on July 12, 2013, which the court granted on July 18. The district court eventually entered an injunction, holding that "the City's approval of this display of crosses constitutes an impermissible endorsement of religion that violates the Establishment Clause of the First Amendment," and ordered that Evansville was permanently enjoined from permitting the display's erection.

The City did not appeal the decision. West Side, as intervenor, filed a timely appeal.

## II. ANALYSIS

West Side argues that the display does not violate the Establishment Clause and that we should reverse the district court and vacate the permanent injunction. West Side also argues that the injunction violates its First Amendment rights. However, we need not reach these issues because we hold that West Side lacks standing to pursue this appeal.

Standing ensures that the parties have a vested interest in the case and guarantees that the court only adjudicates "cases and controversies." *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661 (2013); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–60 (1992). To satisfy Article III's standing requirements, a litigant must show that (1) it has suffered an actual or imminent concrete and particularized "injury in fact"; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). The elements of standing must be satisfied not only at the outset of trial, but also on appeal. *See Hollingsworth*, 133 S. Ct. at 2661. Since Evansville has decided not to appeal the district court's decision, it is now incumbent on West Side to demonstrate that it has standing to pursue this appeal.

West Side argues that it has standing for two different reasons. First, it contends that it has standing to challenge the lower court's decision that the display was unconstitutional. Second, it argues it has standing because the injunc-

tion violates West Side's First Amendment rights. Both arguments fail, but for different reasons.

As to the first argument, the lower court's holding that the display was a violation of Cabral's and Tarsitano's First Amendment rights and its entry of an injunction does not injure West Side in any way that we can redress. Redressability "examines the causal connection between the alleged injury and the judicial relief requested" with the "focus on the requested relief." *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984). "[T]he relevant inquiry is whether … the plaintiff has shown an injury to himself that is likely to be redressed by a favorable decision." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38 (1976).

Here, the relief West Side requests is that we reverse the district court's decision and vacate the injunction that prohibits Evansville from permitting the display to be erected. Notably, the injunction does not compel West Side to act in any particular way or refrain from acting in any particular manner; instead, the injunction specifically runs against Evansville, and only Evansville. *See Cabral v. City of Evansville*, 958 F. Supp. 2d 1018, 1029 (S.D. Ind. 2013) ("*the City* is hereby PERMANENTLY ENJOINED from permitting the erection of the display as described and referred to herein as 'Cross the River' within the Riverfront area" (emphasis added)). Stated another way, the only party that is "expressly bound" by the injunction is Evansville, whose legal rights and actions are explicitly restricted by the injunction. *Transamerica Ins. Co. v. South*, 125 F.3d 392, 397 (7th Cir. 1997). Conversely, any injury West Side suffered as a result of the injunction is "derivative" since "[n]othing in the injunction[] imposes any disabilit[y]" upon West Side. *Kendall-*

*Jackson Winery, Ltd. v. Branson*, 212 F.3d 995, 998 (7th Cir. 2000). In other words, if we vacated the injunction, it would directly affect how Evansville can act going forward, *e.g.*, it could allow the display to be erected. However, West Side's status would only change if a third party so allowed, *e.g.*, if Evansville allowed West Side to erect the display.

That fact dooms West Side's redressability argument because if were we to vacate the injunction, we could only speculate as to whether West Side's injury would be redressed, and such speculation is not enough to support standing. *See Laidlaw*, 528 U.S. at 180–81 (noting standing requires that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision"). If we vacated the injunction, Evansville might grant West Side's permit, as it did in 2013. On the other hand, Evansville might also deny the permit for any number of reasons. Both courses of action would be consistent with any vacating order, and we have no way of knowing which way Evansville would proceed. Such speculation is not enough to turn this into a case and controversy with a redressable injury. *See ASARCO, Inc. v. Kadish*, 490 U.S. 605, 615 (1989) (holding party did not have standing, in part, because "[w]hether the association's claims of economic injury would be redressed by a favorable decision in this case depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict"); *Ariz. Christian Sch. Tuition Org. v. Winn*, 131 S. Ct. 1436, 1444 (2011) (finding no standing where "[e]ach of the inferential steps to show causation and redressability depends on premises as to which there remains considerable doubt"). West Side has not presented us with any evidence that Ev-

ansville's decision on whether to grant the permit going forward has "been or will be made in such manner as to produce causation and permit redressability of injury." *Lujan*, 504 U.S. at 562. West Side might argue that Evansville's grant of the permit in 2013 allows us to infer that Evansville would permit the erection now, but West Side has not presented any proof along those lines.

That brings us to West Side's second redressability problem, namely that Evansville is not a party before us. Evansville is the only party that is expressly bound by the injunction and so any decision we made on the merits of this case would affect only its legal rights. Yet it is basic appellate procedure that "a judgment will not be altered on appeal in favor of a party who did not appeal [even if] the interests of the party not appealing are aligned with those of the appellant." *Albedyll v. Wis. Porcelain Co. Revised Ret. Plan*, 947 F.2d 246, 252 (7th Cir. 1991) (quoting 9 J. Moore & B. Ward, *Moore's Federal Practice* ¶ 204.11[4] (1991)). As we stated in *Kendall-Jackson*, "[t]he critical question is this: when a district judge enters an order creating obligations only for Defendant A, may the court of appeals alter the judgment on appeal by Defendant B when obligations imposed on A indirectly affect B?" 212 F.3d at 998. We found we could not alter the judgment in that case. *Id*. We cannot here, either. Besides the obvious concerns of deciding a party's legal rights without hearing its arguments and imposing a judgment on a party that has consciously decided not to appeal a decision, there are practical problems with adjudicating rights of non-appealing parties. The Fourth Circuit recently explained that:

> [O]ffering a non-appealing party the automatic bene-
> fit of any appellate decision won without its participa-
> tion would produce an intractable free-rider problem,
> not to mention endless follow-on litigation by non-
> appealing parties to determine whether their interests
> are closely enough aligned with those of the appeal-
> ing party to warrant the benefit of the appellate
> judgment.

*K.C. v. Shipman*, 716 F.3d 107, 117 (4th Cir. 2013).

West Side tries to save its case by arguing that if it does not have standing to challenge the merits of the lower court's decision to grant the injunction (which, as we discussed above, it does not), then it has standing since the injunction violates West Side's First Amendment rights and leaves it in the same position as if it had applied for a permit and been denied. This argument fails and also demonstrates why West Side does not have standing at this point to challenge the constitutionality of the injunction. The simple fact is that West Side is not in the same position as if it had sought a permit from Evansville and been denied. Had it proceeded in that manner, we expect that Evansville would have denied the permit because of the injunction. West Side could have then filed a suit under 42 U.S.C. § 1983 alleging Evansville's actions violated its First Amendment rights; at that point, West Side would have suffered an injury, fairly traceable to the actions of a governmental actor that we could redress. In that case, West Side would have standing. Here, there is no injury traceable to Evansville's actions because Evansville has not caused West Side any injury—it has not denied West Side a permit nor has it prevented West Side from erecting the display. West Side cannot therefore

show it has suffered an injury that is traceable to, or caused by, Evansville's actions. *See, e.g., Love Church v. Evanston*, 896 F.2d 1082, 1086 (7th Cir. 1990) (holding that because Love Church never applied for, or was denied, a permit, it did not have standing to challenge ordinance); *see also Roe v. Elyea*, 631 F.3d 843, 864 (7th Cir. 2011) ("A successful § 1983 plaintiff therefore must establish not only that a state actor violated his constitutional rights, but also that the violation *caused* the plaintiff injury or damages" (emphasis in original)).

West Side's citation to *Kendall-Jackson* does not provide support for its standing argument. In *Kendall-Jackson*, various liquor suppliers brought a 42 U.S.C. § 1983 action against the Illinois Liquor Control Commission, asking the district court to declare that a certain act the Commission enforced violated the Contracts Clause of the United States Constitution. *Kendall-Jackson*, 212 F.3d at 996. The district court ruled in favor of the suppliers and issued an injunction prohibiting the Commission from enforcing the act. *Id.* Some liquor distributors, on whose behalf the Commission had previously enforced the act, appealed the decision. *Id.* at 997. As is the case here, the governmental entity that was the only party bound by the injunction, the Commission, did not appeal the decision, but the private parties that suffered a derivative injury did appeal. *Id.* at 996–97 ("[T]he district court's injunction runs against the Commission exclusively."). Even though the distributors sought to have the injunction vacated, we held that the distributors did not have standing to bring suit because "the injunction injures them, but how can their appeal redress that injury given that the injunction will continue to bind the Commission?" *Id.* at 998. In dicta, we speculated that "it is possible to see how such a question may be answered affirmatively" in cases when "a statute

creates a private right of action … [that] may be enforced by private parties by suits against the agencies … or under 42 U.S.C. § 1983 to the extent the defendant is a state actor." *Id.* at 998. West Side argues this dictum provides it with standing. But a key element of that speculation is that the private party could bring a suit against the agency or governmental actor; here, West Side could not yet bring a § 1983 suit against Evansville because, as discussed above, Evansville has not caused West Side any injury.

West Side's counsel represented during oral argument that it would apply for a permit in the upcoming year. Nothing in the district court's injunction prevents it from seeking that permit. If Evansville denies the request and West Side chooses to file a suit under 42 U.S. § 1983 and challenge that denial, it would have standing to proceed (though that says nothing about the merits of its claims). Until then, this appeal must be dismissed for lack of standing.

We caution, however, that West Side's road ahead might not necessarily get any easier if it ever attains standing to challenge the injunction. We question whether a reasonable observer would be put on notice that the "Cross the River" display is strictly private speech given the sheer magnitude of a display that takes up four blocks and has two signs alerting citizens that it is a private display. *See Milwaukee Deputy Sheriffs' Ass'n v. Clarke*, 588 F.3d 523, 527 (7th Cir. 2009) (holding that whether the government violates the Establishment Clause must be determined from the vantage of the "objective 'reasonable person' … [who] is presumed to be 'informed … [and] familiar with the history of the government practice at issue'" (quoting *Vasquez v. L.A. County*,

487 F.3d 1246, 1256 (9th Cir. 2007)). However, because that issue is not before us, we need not resolve it at this point.

### III. CONCLUSION

For the foregoing reasons, we DISMISS the appeal for lack of standing.