In the

# United States Court of Appeals
## For the Seventh Circuit
_____

No. 24-1212

CELLCO PARTNERSHIP, d/b/a VERIZON WIRELESS,

*Plaintiff-Appellee,*

*v.*

CITY OF MILWAUKEE and JERREL KRUSCHKE,

*Defendants,*

APPEAL OF: DEER DISTRICT LLC,

*Intervening Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:23-cv-01581-BHL — **Brett H. Ludwig**, *Judge.*

_____

ARGUED NOVEMBER 14, 2024 — DECIDED JUNE 13, 2025

_____

Before JACKSON-AKIWUMI, PRYOR, and MALDONADO, *Circuit Judges.*

MALDONADO, *Circuit Judge.* Two years ago, in an effort to improve network coverage, Verizon Wireless sought permits

from the City of Milwaukee to install small cells and matching utility poles in a downtown plaza next to a major arena. The City denied most of the permits, initially citing aesthetic concerns and proximity to existing poles. Later, it asserted that it lacked authority to grant the permits because the plaza was leased to a private entity, Deer District LLC.

Verizon sued the City in federal court, arguing that the denials violated the Telecommunications Act (TCA), 47 U.S.C. § 332(c)(7)(B)(iii), and Wis. Stat. § 66.0414. After a bench trial, the district court ruled for Verizon. It concluded that the City's shifting justifications did not hold up and that the City wanted to steer Verizon toward using Deer District's own wireless system. Exercising its equitable authority under the TCA, the district court ordered the City to issue the permits. Verizon has since installed the poles.

The City accepted the ruling. Deer District—an intervening-defendant—did not. It now appeals, challenging the district court's interpretation of the lease and Wis. Stat. § 66.0414, but not its holding under the TCA. In essence, Deer District argues that the district court's decision, particularly its characterization of the plaza as a public right-of-way, violates its rights under the lease. As discussed below, we cannot reach Deer District's arguments because it lacks Article III standing to bring this appeal. We therefore dismiss for want of jurisdiction.

## BACKGROUND

### I. Facts

In July 2021, the Milwaukee Bucks won the NBA Finals. The championship series spanned two weeks and drew thousands of fans to the Bucks' arena, the Fiserv Forum, and its

adjacent pedestrian mall, the Deer District Public Plaza (the Plaza). The large crowds strained cellular coverage in the area. Verizon's network, in particular, struggled to support the volume of devices, resulting in unreliable service for many customers.

Then, in December 2022, news broke that the Fiserv Forum would host the Republican National Convention (RNC) in July 2024, an event projected to attract 50,000 attendees over four days. Wary of repeating the network issues experienced during the NBA Finals, Verizon began exploring options to improve cellular coverage in the Plaza.

Initially, Verizon sought to install "small cells," short-range mobile cell sites designed to augment network capacity in dense urban areas, on existing utility poles in the Plaza. But the City of Milwaukee rejected this request because it did not own the poles. The City explained that these poles were owned by Deer District LLC, an affiliate of the Milwaukee Bucks, and that Deer District refused permission for the small cells to be installed.

Unable to utilize the existing infrastructure, Verizon considered alternatives. One option was to design, construct, and install its own utility poles in the Plaza, which would require Verizon to secure the necessary city permits. Alternatively, Verizon considered a proposal from Deer District to deploy a distributed antenna system (DAS) instead of small cells. Under Deer District's proposal, Verizon would pay Deer District an initiation fee of $10 million to use the DAS and then a monthly rent of $10,000, subject to a 3.5% increase per year. In the end, Verizon decided to install its own small-cell poles, concluding that the DAS would introduce compatibility

issues with its existing network and that Deer District's proposal was cost-prohibitive.

Accordingly, on August 3, 2023, Verizon submitted permit applications with the City to install four small-cell poles: three within the Plaza and one north of the Fiserv Forum. Verizon specified in its permit applications that the poles would be custom-made to match the existing ones in the Plaza.

On October 24, the City approved Verizon's permits for the pole to be constructed outside the Plaza. Two days later, however, the City denied the permits for the three proposed poles within the Plaza. In an email to Verizon, the City justified the denials because the proposed poles were "too close to existing poles" and constituted "unsightly or out-of-character deployments" in violation of the City's aesthetic requirements.

The next day, Deer District's lawyer told the City that its lease of the Plaza precluded it from permitting Verizon to install poles in the Plaza. Specifically, the City had leased the Plaza to Wisconsin Center District, a quasi-governmental entity, which subleased the property to Deer District. According to Deer District, its sublease (the Lease) granted it exclusive rights over commercial activities in the Plaza, including the installation of public utilities. The email also referenced Deer District's ongoing proposal to implement a DAS as an alternative for Verizon to improve network connectivity.

On November 10, two weeks after receiving Deer District's email and ninety-nine days after Verizon submitted its permit applications, the City sent Verizon a letter offering an additional rationale for the permit denials. Adopting Deer District's position, the City claimed that it lacked authority to

grant permits for pole installations within the Plaza because it had effectively transferred all control over the Plaza to Deer District, reserving only limited rights for public transportation and public access. Two weeks later, Verizon sued the City of Milwaukee and its Commissioner of Public Works in federal court.

## II. Procedural History

Verizon's complaint proceeded under two causes of action. First, it alleged that the City's permit denials were preempted by the TCA, 47 U.S.C. § 332(c)(7)(B)(iii), because the denials were not supported by "substantial evidence." It also alleged that the denials violated Wis. Stat. § 66.0414, which requires approval of small wireless facility permits inside a "right-of-way" unless they conflict with specified regulations. Because the RNC was only months away, Verizon sought "expedited review" of its claims in the district court and moved for a preliminary injunction. *See* 47 U.S.C. § 332(c)(7)(B)(v).

The City argued that it did not violate either statute, maintaining that it lacked the authority to issue permits for the Plaza since the property was leased to Deer District. The City conceded that the Plaza was "technically" a public right-of-way that would ordinarily be subject to the TCA and Wis. Stat. § 66.0414, but it contended that the Lease extinguished some of the City's rights (and obligations) under those statutes.

On January 19, 2024, the district court held an initial hearing on Verizon's motion for a preliminary injunction. After this hearing, and on the City's recommendation, the district

court invited Deer District to join the suit. Three days later, Deer District moved to intervene, and the court granted its motion. Two days after that, with all parties' consent, the court held a bench trial on the merits under FED. R. CIV. P. 65(a)(2), hearing arguments from Verizon, the City, and Deer District, along with witness testimony and numerous declarations and exhibits.

After the trial, the district court ruled in favor of Verizon. First, it found that the City's initial two grounds for denial, aesthetic concerns and proximity of the proposed poles to existing poles, were not supported by substantial evidence and thus violated the TCA. The district court emphasized that the City's justifications were "hard to square with the record," noting that Verizon designed the poles to match those in the Plaza and placed them just one foot closer to existing poles than a previously approved permit. As for the City's third rationale for denial, that Deer District held exclusive property rights to the Plaza, the district court found it untimely, as it was raised after the TCA's 90-day deadline.[1] Regardless, the district court opined that this argument would also fail on the merits because the Plaza was unquestionably a public right-of-way in which the City retained rights. The district court went on to hold that the City also violated Wis. Stat. § 66.0414,

---

[1] Both the TCA and Wis. Stat. § 66.0414 require municipalities to respond to applications for the construction of small cell facilities within ninety days. *See* Declaratory Ruling and Third Report and Order, *Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Investment*, 33 FCC Rcd 9088, ¶ 105 (2018); Wis. Stat. § 66.0414(3)(c)1.d. The deadline for the City to respond to Verizon's August 3 applications was November 1, 2023, but its third rationale for denial did not come until November 10, 2023.

finding no evidence showing that the permit applications failed to meet any of the applicable codes or ordinance standards.

Next, the district court concluded that equitable relief was warranted under the TCA. It found that Verizon would suffer irreparable reputational harm without suitable connectivity during the RNC and that proper service would benefit the community. The court also noted evidence of the City's "gamesmanship and backroom dealing," suggesting its true motive for denying the permits was to push Verizon toward Deer District's DAS project. Accordingly, the district court issued an injunction requiring the City to grant Verizon the denied permits within seven days.

The City did not appeal the district court's ruling and, on February 1, 2024, issued Verizon permits for the remaining small-cell poles. Verizon installed the poles shortly thereafter, and they are now operational. On February 9, after the permits were issued, Deer District appealed.

Two features of Deer District's appeal are notable. To start, the City did not join the appeal. Second, Deer District does not challenge the district court's holding that the City violated the TCA. Instead, it argues that the district court erred in identifying the Plaza as a "right-of-way," as used in Wis. Stat. § 66.0414, and likewise misinterpreted its rights under the Lease. On these bases alone, Deer District asks us to vacate the district court's judgment against the City.

As described below, these two features preclude us from redressing any harm Deer District may have suffered from the injunction. For that reason, Deer District lacks standing and we must dismiss the case without reaching the merits.

## DISCUSSION

To invoke federal court jurisdiction, a party must first clear the threshold set by Article III of the Constitution: presenting an actual case or controversy. *Murthy v. Missouri*, 603 U.S. 43, 56 (2024). A key aspect of the case-or-controversy requirement is that plaintiffs must demonstrate standing to sue. *Id.* at 57. Those seeking appellate review must prove Article III standing, just like those appearing in trial courts. *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013). The standing inquiry presents a question of law that we review de novo and, if necessary, sua sponte.[2] *See Juidice v. Vail*, 430 U.S. 327, 331 (1977).

A litigant must satisfy three criteria to establish standing: injury, causation, and redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). In this case, we focus on redressability, which examines the "relationship between 'the judicial relief requested' and the 'injury' suffered." *California v. Texas*, 593 U.S. 659, 671 (2021) (quoting *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984)). It requires the litigant to prove that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561 (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 38, 43 (1976)). The requirement stems from the "bedrock principle that a federal court cannot redress 'injury that results from the independent action of some third party not

---

[2] Neither party raised the issue of standing in their appellate briefing. After oral argument, the Court requested and received supplemental jurisdictional memoranda from both parties addressing whether Deer District has Article III standing to pursue this appeal.

before the court.'" *Murthy*, 603 U.S. at 57 (quoting *Simon*, 426 U.S. at 41–42).

The most glaring issue with Deer District's appeal is the City's absence. Deer District asks us to vacate the district court's injunction, but the injunction runs exclusively against the City. *Cellco P'ship d/b/a Verizon Wireless v. City of Milwaukee*, No. 23-CV-1581-BHL, 2024 WL 329001, at *11 (E.D. Wis. Jan. 29, 2024) ("It is hereby ordered that the City of Milwaukee must issue Verizon the six permit applications it previously denied within seven days of the date of this order." (emphasis omitted)).

Even if we accept that Deer District suffered a concrete injury "derivative" of the injunction, that injury cannot be redressed unless we can vacate an injunction against a party not before us. *Kendall-Jackson Winery, Ltd. v. Branson*, 212 F.3d 995, 998 (7th Cir. 2000). Thus, the "critical question" here is "when a district judge enters an order creating obligations only for Defendant A, may the court of appeals alter the judgment on appeal by Defendant B when obligations imposed on A indirectly affect B?" *Id.* The answer in this case is no.

A court will not change a judgment in favor of a party that chose not to appeal, "even if the interests of the party not appealing are aligned with those of the appellant." *Cabral v. City of Evansville*, 759 F.3d 639, 643 (7th Cir. 2014) (quotation omitted and cleaned up); *see also Greenlaw v. United States*, 554 U.S. 237, 244 (2008) ("[A]n appellate court may not alter a judgment to benefit a nonappealing party."); 15A Wright & Miller's Federal Practice & Procedure § 3904 (3d ed.).

Several concerns animate this core appellate principle. First, fairness. When a party declines to appeal, reviewing the

judgment raises "obvious" process concerns by denying the Court the opportunity to consider its arguments. *Cabral*, 759 F.3d at 643. Moreover, allowing review could encourage litigants to strategically opt out of an appeal in the hope of reaping the benefits of another party's success. In other words, we would create "an intractable free-rider problem." *Id.* (quoting *K.C. v. Shipman*, 716 F.3d 107, 117 (4th Cir. 2013)). Second, efficiency. Adjudicating the rights of non-appealing parties invites "endless follow-on litigation" to determine whether their interests are closely enough aligned with those of the appealing party. *Id.* Such piecemeal litigation serves to complicate, rather than settle, the parties' expectations after a judgment. Taken together, these concerns show how the principle prevents cascading litigation and honors the strategic choices of non-appealing parties.

We have no reason to stray from this "unwritten but longstanding rule." *Greenlaw*, 554 U.S. at 244. By not appealing, the City remains bound by the district court's injunction regardless of what we rule in this appeal. *1000 Friends of Wis. Inc. v. U.S. Dep't of Transp.*, 860 F.3d 480, 483 (7th Cir. 2017) ("A court of appeals cannot modify a judgment to make it more favorable to a party that did not file a notice of appeal."). Therefore, Deer District's alleged injury from the judgment—the City permitting Verizon to install poles in the Plaza—cannot be redressed by this Court. *See id.* at 482 ("[D]ecision after decision, by the Supreme Court and this circuit, holds that, when the public agency with duties under a judgment elects not to appeal, a different litigant cannot step into the agency's shoes and carry on.").

Our decision in *Cabral v. City of Evansville* supports this conclusion. There, the City of Evansville granted a local

church a permit to temporarily erect numerous crosses along a public riverfront property. *Cabral*, 759 F.3d at 641. Several residents then sued Evansville under the First Amendment and sought to enjoin the crosses' installation. The church intervened in the suit. The district court sided with the residents and permanently enjoined Evansville from issuing the permits. Evansville did not appeal the decision, but the intervenor church did. *Id.*

On appeal, our Court dismissed the church's case on standing grounds, finding that it failed to satisfy the redressability prong. *Id.* at 641–43. We addressed the redressability problem from two angles. First, we highlighted that even if we vacated the injunction against Evansville, "we could only speculate as to whether [the church's] injury would be redressed" because Evansville would still be free to either permit the church's display or not. *Id.* at 642. We explained that "[s]uch speculation is not enough to turn this into a case and controversy with a redressable injury." *Id.* at 642–43 (citing *ASARCO, Inc. v. Kadish,* 490 U.S. 605, 615 (1989)). Second, we underscored that vacating the injunction against Evansville would violate the appellate rule that prevents granting relief to a party who has chosen not to appeal. *Id.* at 643. Like Evansville in *Cabral*, the City of Milwaukee's decision not to appeal has zapped Deer District of standing.

In fact, the redressability problems here run even deeper. Deer District appealed only the district court's rulings on Wis. Stat. § 66.0414 and the Lease—it did not challenge the TCA holding. That's a problem. The injunction rests on the TCA holding. We know this because the district court's analysis of equitable relief focused exclusively on the TCA. And so Deer District failed to challenge the operative holding.

To illustrate the problem, imagine granting Deer District all the relief it seeks on appeal: finding that the Plaza is not a right-of-way and that the City gave Deer District exclusive control over public utilities through the Lease. The City would then face two conflicting orders. First, an injunctive order from the district court directing it to issue the permits under the TCA. Second, an order from this Court finding that the City generally lacks authority to issue those permits, but leaving the unchallenged TCA holding intact. What's the City expected to do then?

The predicament worsens when we consider that the small-cell poles have already been installed. Deer District did not ask this Court to order Verizon to remove the poles, and even if it had, it is unclear on what basis our Court could grant such relief. This all begs the question: What does Deer District actually want from this Court?

Statements during oral argument reveal Deer District's true objective. There, the Court asked why Deer District had not sought a stay of Verizon's pole installations pending appeal. In response, counsel downplayed the significance of the pole installations and instead stressed that its "main concern" was preserving its rights under the Lease and preventing the Plaza from being deemed a public right-of-way, warning that the decision would invite other wireless providers to adopt Verizon's tactics. Oral Argument at 4:20-5:04. As such, it expressed hope for an opinion from our Court that detailed its property rights in the Plaza, even though such a decision would have no practical effect on the current dispute. Put another way, Deer District is asking for an advisory opinion. But "federal courts do not issue advisory opinions." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021). If Deer District

believes that the City is not respecting the terms of the Lease, a more appropriate way to address that problem would be in an action against the City, not in a spin-off suit against Verizon.

## CONCLUSION

For the reasons explained, Deer District lacks standing to pursue this appeal. Accordingly, we DISMISS the appeal for want of jurisdiction.