**LOUISIANA & ARKANSAS RAILWAY COMPANY**

v.

**Marie McCauley BICKHAM, as Testamentary Executrix of the Succession of Talmadge D. Bickham, Jr.**

Civ. A. No. 83–4–B.

United States District Court, M.D. Louisiana.

Feb. 14, 1985.

F. Frank Fontenot, Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, La., for plaintiff.

Curtis K. Stafford, Jr., Baton Rouge, La., for defendant.

POLOZOLA, District Judge.

Louisiana & Arkansas Railway Company ("L & A") filed this action against the succession of Talmadge D. Bickham, Jr. ("Bickham"), through its executrix, seeking injunctive relief and damages. More specifically, L & A seeks to enjoin Bickham from interferring with L & A's use of a servitude on which L & A has a railroad track. L & A also seeks to recover damages from Bickham as a result of Bickham's alleged unlawful removal of the railroad track from an area near the Bickham home. Bickham is the owner of a tract of

land in East Baton Rouge Parish which is located near the Georgia-Pacific plant in Port Hudson, Louisiana. In 1903 Bickham's ancestor in title granted a limited personal servitude of passage to the Shreveport and Red River Valley Railroad ("SRRV"). Through a series of conveyances, L & A subsequently became the owner of the railroad line originally owned by the SRRV.

After the Georgia-Pacific plant was built in Port Hudson, Louisiana, L & A furnished interstate rail service in and out of the plant. The Bickham servitude was used by L & A for moving, switching and temporarily storing rail cars as part of those shipments. L & A's use of the servitude continued until approximately 1978, when the switch was spiked down due to the unsafe condition of the tracks.

In 1981, Bickham's employees, at the direction of T.D. Bickham, removed several hundred feet of railroad ties and rails from the servitude. L & A now seeks to enjoin Bickham from further interference with its use of the servitude, as well as the cost of replacement of the tracks. Bickham, however, contends that the servitude has been extinguished either by the ten year prescription for nonuse provided in Louisiana Civil Code article 753 [1] or by the occurrence of the resolutory condition contained in the deed granting the servitude, which provided:

> This right-of-way shall be in perpetuity or so long as it is used by said company, its successors or assigns, as a railroad.

■ The Interstate Commerce Commission ("ICC") has been granted exclusive authority by Congress to regulate the activities of interstate rail carriers, including their decisions relative to cessation of service on branch lines. *Chicago and North*

Western Transportation Co. v. Kalo Brick & Tile Co., 450 U.S. 311, 313, 101 S.Ct. 1124, 1128, 67 L.Ed.2d 258 (1981); 49 U.S.C. § 10501. " 'Cessation of service ... or long disuse of the line, coupled with the intention not to resume such service or use' " constitutes abandonment,[2] over which the ICC has both exclusive and plenary authority. Thus, state efforts at regulation of rail carriers which conflict or interfere with the federal scheme must fall. *Kalo Brick, supra*, at 318–323, 101 S.Ct. at 1130–1133.

■ Congress has provided a detailed procedure which must be followed before operations over any part of an interstate rail carrier's lines may be abandoned or discontinued, 49 U.S.C. § 10901, *et seq.* Any local law in conflict therewith is preempted by this federal statutory scheme. Abandonment of a railroad line cannot be required by the state absent a certificate of abandonment from the ICC. *New Orleans Terminal Co. v. Spencer*, 366 F.2d 160, 164–66 (5th Cir.1966).[3]

■ Extinguishment of the Bickham servitude under Louisiana law would force the railroad to abandon this branch line. This is in direct conflict with § 10903, which prohibits an interstate rail carrier from abandoning a line without ICC approval. *See ICC v. Chicago and North Western Transp. Co.*, 533 F.2d 1025, 1028 (8th Cir. 1976). Thus, state law must yield to Congress' "paramount control insofar as interstate commerce is involved." *Colorado v. United States*, 271 U.S. 153, 165–66, 46 S.Ct. 452, 454–55, 70 L.Ed. 878 (1926); *Kalo Brick, supra*, 450 U.S. at 321, 101 S.Ct. at 1132.

■ Bickham could have filed an application with the ICC to have the line declared abandoned prior to his destruction of

---

**1.** Article 753 provides: "A predial servitude is extinguished by nonuse for ten years."

**2.** *City of Alexandria, Louisiana, v. Chicago, Rock Island and Pacific Railroad Co.,* 311 F.2d 7, 10 (5th Cir.1962), citing *Akron & Barberton Belt R.R. Abandonment of Operation,* 239 I.C.C. 250, 254.

**3.** In *Spencer,* permission to construct rail crossings over certain city streets was granted by the Jefferson Parish Police Jury. Several years later, the Police Jury passed an ordinance compelling removal of the tracks. The Fifth Circuit held that federal law relative to abandonments pre-empted the ordinance and thus, the ordinance was unenforceable.

the remaining tracks.[4] Had he successfully done so, he then could have sought enforcement of the resolutory condition in the servitude deed.[5] Since Bickham failed to take such action, interference with L & A's use of the servitude is unlawful. Consequently, this Court holds that Bickham is permanently enjoined from interfering, diminishing, or making more inconvenient L & A's reinstatement, use or operation and maintenance of its railroad servitude.

The parties shall, within fifteen days, prepare and file with the Court a proposed judgment in accordance with this opinion.

---

**4.** In *Thompson v. Texas Mexican Railway Co.,* 328 U.S. 134, 145, 66 S.Ct. 937, 944, 90 L.Ed. 1132 (1946), the court stated that persons other than carriers who have a proper interest in the subject matter may bring an abandonment proceeding.

**5.** Once the ICC has declared a line abandoned, its jurisdiction is terminated, and state law applies. *Hayfield Northern Railroad Co. v. Chica-*

*go and North Western Transp. Co.,* — U.S. —, 104 S.Ct. 2610, 81 L.Ed.2d 527 (1984). This Court notes that Louisiana Civil Code article 2047 requires a court judgment to give effect to a resolutory condition dependent upon the will of one of the parties, rather than simple extinguishment of the contract upon occurrence of the condition, as contended by Bickham.