In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-2815

CARLA HILL,

*Plaintiff-Appellant,*

*v.*

JOHN E. POTTER, Postmaster General,
United States Postal Service,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:07-cv-06835—**David H. Coar**, *Judge.*

ARGUED JANUARY 20, 2010—DECIDED AUGUST 30, 2010

Before FLAUM, KANNE, and EVANS, *Circuit Judges*.

KANNE, *Circuit Judge*. Carla Hill sued John E. Potter, the Postmaster General of the United States Postal Service, for age and disability discrimination and for retaliating against her for engaging in protected activities. The district court granted summary judgment to the Postal Service on each of her claims. Hill appealed only the rejection of her retaliation claim. We affirm.

**I. BACKGROUND**

Carla Hill began working for the Postal Service in 1995 and has been at the Hazel Crest, Illinois, facility since 1998. She was promoted to full-time letter carrier in 1999. James Fuscaldo was Hill's supervisor through 2006. The management at the Hazel Crest office changed relatively frequently. Karen Mysukens was Postmaster until July 2003, when Patrick Kavanaugh took over. Syed Ahmed took over the post briefly in the spring of 2006, and Beverly Greene became Postmaster in May 2006.

From 2002 through 2005, Hill filed a series of Equal Employment Opportunity (EEO) complaints against her supervisors, including Kavanaugh and Fuscaldo, claiming that they discriminated against her. She also contacted an EEO specialist on other occasions that did not result in a formal complaint being filed.[1] Lower-level employees at the Hazel Crest office were generally aware of Hill's EEO activities.

Hill hurt her back while on duty in November 2002. The Department of Labor's Office of Workers' Compensation Programs ("OWCP") certified her injury as work-related, and she was placed on "limited duty" status. Employees on limited duty status are guaranteed eight hours of paid work each day, even if no work is available within the injured employee's work restrictions. Hill's limited duty status was to last until September 2003.

---

[1] The details of the EEO complaints are irrelevant to our resolution of this appeal. For our purposes, what matters is that she filed the complaints.

As luck would have it, Hill claims that she injured her back again in September 2003 and wanted to reapply for limited duty status. Kavanaugh erroneously told her to fill out the form for a recurrence of injury, rather than the proper form for a new injury. Dale Schultz of OWCP handled Hill's claim for her new injury. Kavanaugh wrote a letter to Schultz stating that Kavanaugh did not believe Hill's injury was as serious as she claimed it to be and requesting that Schultz deny her request to be put back on limited duty status.

Schultz ultimately placed Hill on "light duty" status. Employees on light duty status are not guaranteed eight hours of work each day; management has discretion to send light duty status employees home without pay if there is no work available within their physical limitations. From December 2003 through July 2004, Fuscaldo and Kavanaugh sent Hill home without pay for 618 hours, resulting in approximately $12,000 of foregone wages. During that same period, other employees in the Hazel Crest facility worked 821 hours of overtime.

Hill was interested in obtaining a position as a window clerk as early as 2000. She twice submitted her written application to become a window clerk: first in February 2000 to Steve Schneider, and again in March 2003 to Karen Myuskens. She also documented her interest in the window clerk position in a 2004 settlement agreement. Fuscaldo was aware of her interest in the window clerk position.

A window clerk position became available in the Hazel Crest facility in August 2005, June 2006, and

March 2007. Fuscaldo hired Suzanne Hankins in 2005 and Carol Mottley in 2006. Beverly Greene hired Kendra McGhee for the window clerk position in 2007. Hill did not apply in writing with Fuscaldo in 2005 or 2006 or with Greene in 2007. Hankins, Mottley, and McGhee all submitted their interest for the position in writing prior to being hired for the position. The Postal Service did not produce any of these letters during discovery.

Fuscaldo and Greene both stated that their policy was to hire whoever requested the position first in writing with the postmaster at the time. The Postal Service concedes that this policy is undocumented, and a Postal Service handbook says that hiring decisions are based on seniority or qualifications. The Postal Service also did not mention the "first-come, first-served" policy in response to an interrogatory asking about the Postal Service's hiring practices.

The district court granted summary judgment to the Postal Service on all of Hill's claims, finding that the reduction in her hours was not an adverse action and that she failed to show the Postal Service's proffered reason for not hiring her to be pretextual. This appeal followed.

## II. ANALYSIS

We review the district court's grant of summary judgment *de novo*. *Nat'l Inspection & Repairs, Inc. v. George S. May Int'l Co.*, 600 F.3d 878, 882 (7th Cir. 2010). We view

the evidence in the light most favorable to Hill, the non-moving party, and give her the benefit of all reasonable inferences from the evidence. *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008). "We are not required, however, to draw unreasonable inferences in [Hill's] favor . . . ." *Tindle v. Pulte Home Corp.*, 607 F.3d 494, 496 (7th Cir. 2010).

A plaintiff asserting a claim of discrimination or retaliation under Title VII may choose to prove her case under either the direct or indirect method. *Poer v. Asrtue*, 606 F.3d 433, 439 (7th Cir. 2010). Hill has elected to proceed under the indirect method to try to prove her claim for retaliation under Title VII. Under the indirect method, Hill must first show a prima facie case of retaliation, which requires her to produce admissible evidence that (1) she engaged in a statutorily protected activity, (2) the Postal Service took a materially adverse action against her, (3) she was performing her job satisfactorily, and (4) she was treated worse than a similarly situated employee who did not complain of discrimination. *Leonard v. E. Ill. Univ.*, 606 F.3d 428, 431 (7th Cir. 2010). If she succeeds in showing a prima facie case, the burden then shifts to the Postal Service to show a legitimate, non-discriminatory reason for its actions against Hill. If the Postal Service can do so, then the burden shifts back to Hill to show that the Postal Service's proffered reason is pretextual. *Egonmwan v. Cook County Sheriff's Dep't*, 602 F.3d 845, 850 (7th Cir. 2010).

The Postal Service does not question that Hill engaged in protected conduct and that she was performing her

job satisfactorily. The parties dispute, however, whether the Postal Service took any adverse actions against Hill or whether she was treated differently from similarly situated employees. We will consider Hill's two alternative theories of retaliation separately.

*A. Reduced Hours*

First, Hill argues that Kavanaugh was responsible for placing her on light duty status and that Kavanaugh and Fuscaldo then systematically denied her a 40-hour work week. The district court found that Hill did not establish a prima facie case of retaliation based on reduced hours. The court concluded that Hill failed to show that she had applied for the overtime work, that she was qualified to do the overtime work, that the overtime was given to people in the same job position, or that the people who worked the overtime had never filed EEO complaints.

On appeal, Hill argues that the district court misunderstood both the scope of her claim based on her reduced hours and also the role that the evidence of overtime hours played in her argument. The district court focused on the reduction of Hill's hours alone rather than the combination of Kavanaugh "controverting" her injury claim and the subsequent reduction in hours. To be sure, a reduction in hours could be an adverse action giving rise to liability. *See O'Neal v. City of Chicago*, 392 F.3d 909, 911-12 (7th Cir. 2004). But when Hill was on light duty status, she was not guaranteed a 40-hour work week. Therefore, a reduction in her hours while

on light duty status was not *per se* an adverse action. *See Hancock v. Potter*, 531 F.3d 474, 479 (7th Cir. 2008).

Seeking to bolster her claim that Kavanaugh and Fuscaldo reduced her hours for discriminatory reasons, Hill argues that Kavanaugh actually caused her to be placed on light duty status rather than on limited duty status—the latter would have guaranteed that she would be paid for 40 hours of work a week, no matter how little she worked. The decision to place Hill on light duty status was made by the OWCP, an independent government office. However, Kavanaugh wrote a letter to Schultz, the person handling Hill's claim at OWCP, telling Schultz that Hill's claim was fabricated and asking that the claim be controverted. Hill argues that Kavanaugh's letter, the OWCP's decision to place her on light duty status, and the subsequent reduction in her hours constituted an adverse action sufficient to prove her prima facie case of discrimination.

The decision of an independent decision-maker will not shield the employer from liability if the decision-maker was tainted or influenced by the employer's illegal motives such that the decision-maker "acted as the conduit of [the employer's] prejudice." *Shager v. Upjohn Co.*, 913 F.2d 398, 405 (7th Cir. 1990). This rule, known as the "cat's paw" rule, "provides that an employer cannot shield itself from liability for unlawful termination by using a purportedly independent person or committee as the decisionmaker where the decisionmaker merely serves as the conduit, vehicle, or rubber stamp by which another achieves his or her unlawful design." *Dedmon v.*

*Staley*, 315 F.3d 948, 949 n.2 (8th Cir. 2003). Hill urges us to apply the "cat's paw" rule to find that Kavanaugh's alleged discriminatory motive tainted and influenced Schultz's decision to place her on light duty status. We find that the cat's paw theory has no application here.

In other cases where we have applied the cat's paw theory, there was evidence from which we could reasonably infer that the employer's ill motives likely had an influence on the purportedly independent decision-maker's thought process. For example, in *Shager*, the court noted that the prejudiced supervisor had set up the terminated employee for failure by assigning him an unproductive territory. 913 F.2d at 405. The supervisor then portrayed the employee's job performance "in the worst possible light." *Id.* The committee making the decision only briefly considered the employee's case, and the court inferred from the evidence that the committee may well have relied on the supervisor's opinion in making its decision. *Id.*

Likewise, in *Phelan v. Cook County*, 463 F.3d 773, 784 (7th Cir. 2006), the court applied the cat's paw rule to find that "an employer [cannot] escape the possibility of strict liability for supervisor harassment simply by scattering supervisory responsibilities amongst a number of individuals, creating a Title VII supervisory Hydra." The two individuals that were subject to the cat's paw theory in *Phelan* had significantly more influence over the final decision than did Kavanaugh here. One "supervisor" in *Phelan* "triggered the termination hearing, selected the hearing officer, and provided infor-

mation critical to the termination decision." *Id.* The other was the plaintiff's hearing officer and had the ultimate authority to fire the plaintiff. *Id.*

Although Kavanaugh did write a letter to Schultz commenting on Hill's claim, there is no evidence from which we can reasonably infer that the letter had any— let alone dispositive—influence in Schultz's decision-making process. First, OWCP enjoyed a level of independence from the Postal Service that neither the committee in *Shager* nor the hearing officer in *Phelan* had. In both of those cases, it appears that the individuals acting as the cat's paw were part of the same organization as the discriminating or harassing supervisor.

Based on the record before us, it would be unreasonable to infer that Schultz simply acted as a rubber stamp of Kavanaugh's prejudice. Second, Hill did not produce any evidence that would suggest Schultz considered Kavanaugh's letter at all, much less to the exclusion of other evidence. Third, because our review is *de novo*, we refuse to read too much into the district court's statement that Schultz changed Hill from limited duty to light duty status "as a result" of Kavanaugh's letter. As we have just noted, there is simply no evidence supporting such a conclusion. Absent even a minimal showing that Kavanaugh's letter had at least some persuasive influence in Schultz's decision to place Hill on light duty status, we cannot consider Hill's placement on light duty status as part of an adverse employment action attributable to the Postal Service.

We agree with the district court that Hill has failed to show that Kavanaugh and Fuscaldo sending her home without pay while she was on light duty status constitutes an adverse employment action. As noted earlier, the reduction of her hours is not *per se* an adverse action because she was not entitled to a 40-hour work week. Hill is correct that just because she is not entitled to the hours does not mean that the Postal Service can reduce her hours for a retaliatory purpose. Yet Hill produced no evidence that there was work available for her to perform within her limitations when she was sent home from work without pay. She suggested that other employees' 821 hours of overtime showed that there was plenty of work to do in the Hazel Crest Office.

The district court concluded that her prima facie case failed because she did not show that she had applied for or was able to work those overtime hours. She argues on appeal that it is irrelevant that she did not apply for the overtime work because she was only trying to show that there was plenty of work to go around, and that Kavanaugh's and Fuscaldo's decision to send her home early without pay was therefore motivated by discrimination.

We disagree that Hill's shortcomings regarding the overtime evidence are irrelevant. Hill was not entitled to 40 hours of work each week while on light duty status. Therefore, in order to show that she was improperly deprived of work hours and the resulting pay, she must show that she at least could have been assigned to work

the hours that she was denied. If there was, in fact, no work that she was qualified to do (based on her light duty status), then she could not have been *improperly* sent home without pay. Although we will make all reasonable inferences on Hill's behalf, we will not simply accept Hill's assumptions as true absent at least some corroborating evidence. Hill fails to identify any evidence that she was qualified to do some of the work that was assigned to other employees when she was sent home without pay. Because we find that Hill has failed to show that she suffered an adverse employment action by having her hours reduced, Hill's retaliation claim based on the reduction of her hours fails.

## B. Failure to Promote

Hill's second theory of liability is based on the Postal Service's failure to promote her on three different occasions to window clerk. Failure to promote can be an adverse action giving rise to liability, *Jackson v. County of Racine*, 474 F.3d 493, 501 (7th Cir. 2007), but the plaintiff must first show that she properly applied for the position, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Hudson v. Chicago Transit Authority*, 375 F.3d 552, 558 (7th Cir. 2004). The Postal Service argues that its unofficial policy (the "Policy") is to hire whoever first submits their interest to the supervisor in charge of hiring and that Hill failed to apply in writing to any of the positions in question. The district court found that Hill met her burden of proving a prima facie case of retaliation, but failed to show that the Postal Service's

proffered reason for not hiring her—that she failed to apply for the jobs—was pretextual.

As an initial matter, there is some question about whether the existence of the Postal Service's Policy is best considered as part of Hill's prima facie case or as part of her efforts to show pretext. We need not answer that question, however, because under either inquiry the Postal Service is entitled to summary judgment. *Cf. Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 477-78 (7th Cir. 2010) (noting that when there is overlap between the evidence required to show a prima facie case and pretext, the court may skip the prima facie question to consider the evidence under pretext).

The Postal Service says that it did not hire Hill for any of the positions in question because she did not apply in writing for the positions. The Postal Service produced the testimony of four witnesses that the Policy exists and that the supervisors who made the hiring decisions during the relevant periods followed the Policy. Hill counters by pointing to her own testimony to the contrary, the fact that the Postal Service did not produce any documents corroborating the existence of the Policy (such as the letters of application from the persons that were hired for the positions), the fact that the Postal Service did not mention the existence of the Policy in response to an interrogatory about the Postal Service's hiring decisions, and the presence of the written policy that is different than the Postal Service's proffered "first-come, first-served" Policy.

The district court found that Hill did not do enough to call into question the existence of the Policy or show

that the Postal Service's asserted reason for not hiring her was pretextual. We agree with the district court that "simply the absence of written documentation of the Policy is not sufficient to meet [Hill's] burden for demonstrating pretext." *Hill v. Potter*, No. 07 CV 6835, 2009 WL 1732542, at *8 (N.D. Ill. June 16, 2009). In order to prove pretext, Hill must come forward with evidence that at least raises the inference that the Postal Service's offered reason is a "phony excuse." *Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004).

Although it may be burdensome to prove a negative, Hill must do more than simply deny that the Policy exists. She must come forward with at least some evidence from which we can infer that the Postal Service's evidence establishing the existence of the Policy is not credible, *Filar v. Bd. of Educ. of Chicago*, 526 F.3d 1054, 1063 (7th Cir. 2008) ("Showing pretext requires [p]roof that the defendant's explanation is unworthy of credence." (alteration in original) (internal quotation marks omitted)), or that the Postal Service had some other policy that it followed when hiring for the window clerk positions in question. None of the evidence she cites against the existence of the Policy gives us reason to disbelieve the Postal Service's positive evidence in favor of the Policy, and the mere fact that the Policy is undocumented does not entitle Hill to present her case to a jury. Absent some evidence from which we could reasonably infer that the Postal Service failed to hire Hill for some reason other than the existence of the Policy, we conclude that Hill has not met her burden under the indirect method. *See Springer v. Durflinger*, 518 F.3d 479,

484 (7th Cir. 2008) ("[W]hen challenges to witness' credibility are *all* that a plaintiff relies on, and he has shown no independent facts—no proof—to support his claims, summary judgment in favor of the defendant is proper.").

Because we conclude that Hill has failed to raise a triable issue of fact regarding whether the Postal Service's proffered reason for not hiring her is pretextual, the Postal Service is entitled to summary judgment on her failure to promote claim.

### III. CONCLUSION

Both of Hill's alternative theories of liability are without merit. Accordingly, we AFFIRM the district court's grant of summary judgment to the Postal Service on Hill's retaliation claim.