In the

# United States Court of Appeals

### For the Seventh Circuit

No. 16-4257

CHESSIE LOGISTICS COMPANY,

*Plaintiff-Appellant,*

*v.*

KRINOS HOLDINGS, INC., et al.,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 C 8864 — **Jorge L. Alonso**, *Judge.*

ARGUED JUNE 1, 2017 — DECIDED AUGUST 15, 2017

Before BAUER, POSNER, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* The plaintiff here is a rail carrier, Chessie Logistics, which claims it was injured when its neighbor Krinos damaged its railroad tracks. Chessie Logistics sued for trespass, negligence, and violation of a federal railroad statute. The district court dismissed the statutory claim and then granted summary judgment to defendants on Chessie's claims for trespass and negligence. On appeal, Chessie seeks

to reinstate its claim under the Interstate Commerce Commission Termination Act of 1995 and its late effort to transform its common-law negligence theory into a negligence per se theory based on an Illinois statute. This appeal asks us to decide two questions: first, whether § 10903 of the federal Act creates an implied right of action, and second, whether Chessie was entitled to change its negligence theory as late as it did. We agree with the district court that the answers are both no. On appeal, Chessie has not challenged the summary judgment on its common-law claims for trespass and negligence. We affirm judgment for defendants.

I.   *Factual and Procedural Background*

Plaintiff Chessie Logistics Company is a railroad authorized to operate just one mile of track in Melrose Park, Illinois, though it has apparently been many years since trains have actually run on those stretches of track. The defendants are a collection of companies that own and operate an industrial facility adjacent to Chessie's tracks. A spur track and a side track run over defendants' property; Chessie says it has easements to use those tracks. The defendants are related companies that include Krinos Holdings and Krinos Realty, and we refer to all defendants collectively as Krinos.

Chessie alleges that in 2012 and 2013, Krinos constructed a sewer line and did other drainage-management work near Chessie's tracks. Chessie claims that the work buried parts of its tracks and created a slope directing runoff onto another part of the tracks, damaging them and rendering them impassable. After Chessie told Krinos about the problem, Chessie says, Krinos removed the dirt from one track (damaging the track in the process) and put it onto another track and into a ditch Chessie needed to manage its drainage. Chessie filed

suit in the Northern District of Illinois, asserting both federal question and diversity jurisdiction, noting that it is an Illinois citizen, all defendants are New York citizens, and the amount in controversy exceeds $75,000. See 28 U.S.C. § 1332(a).

Although Chessie did not need to include its legal theories in its complaint, e.g., *Title Industry Assurance Co. v. First American Title Insurance Co.*, 853 F.3d 876, 880 (7th Cir. 2017), its complaint laid out three such theories: trespass, negligence, and violation of 49 U.S.C. § 10903. Krinos counterclaimed, alleging that Chessie did not have easements to use the spur and side tracks and seeking a declaratory judgment, quiet title, and ejectment. Krinos also moved to dismiss Chessie's claim premised on § 10903: that section, it argued, did not create a private right of action. Section 10903 regulates abandonment of rail lines; it requires rail carriers to receive permission from the Surface Transportation Board before abandoning parts of their lines. The district court agreed that § 10903 did not create a private right of action and dismissed that claim.

After discovery, the parties filed cross-motions for summary judgment. The district court granted Krinos's motion and denied Chessie's. *Chessie Logistics Co. v. Krinos Holdings, Inc.*, No. 13 C 8864, 2016 WL 7034101, at *7 (N.D. Ill. Dec. 2, 2016). Chessie had not shown that it had easements over some of Krinos's property, the court ruled, and even if it had, an independent contractor, not Krinos, caused the intrusion on Chessie's tracks. *Id.* at *5–6. The court therefore granted summary judgment against Chessie's trespass claim, and against its negligence claim "to the extent it is based on trespass." *Id.* at *6.

Chessie argued that its negligence claim was not based wholly on trespass. In its summary judgment brief, Chessie

argued that Krinos was negligent per se. It cited the Illinois Adjacent Landowner Excavation Protection Act, which requires landowners to notify adjoining landowners before excavating. 765 Ill. Comp. Stat. 140/1. Krinos had not followed this statute, Chessie reasoned, and was therefore negligent per se. Krinos argued, and the district court agreed, that Chessie had never made that argument before and that the argument was therefore forfeited. The court granted summary judgment against Chessie's negligence per se claim. Krinos dismissed its counterclaims without prejudice, and Chessie appealed.

II.  *Analysis*

   A.  *Appellate Jurisdiction*

Before addressing the parties' merits arguments, we pause to consider our jurisdiction. The only route to appellate jurisdiction in this case runs through 28 U.S.C. § 1291, which gives us jurisdiction over appeals from district courts' "final decisions." With certain exceptions not relevant here, a decision is final if it "disposes of all claims against all parties." *Dale v. Lappin*, 376 F.3d 652, 654 (7th Cir. 2004). Claims dismissed without prejudice have not been disposed of, and any resulting judgment is not final unless there is a clear legal bar to the claim's revival. *First Health Group Corp. v. BCE Emergis Corp.*, 269 F.3d 800, 801 (7th Cir. 2001) ("[D]ismissal of one claim or theory without prejudice … makes the judgment non-final."); *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002) (dismissal without prejudice for failure to exhaust prison grievance system's remedies was final because plaintiff was no longer a prisoner and could not access that system).

Krinos voluntarily dismissed its counterclaims without prejudice in the district court. If the story ended there, we would not have jurisdiction. *India Breweries, Inc. v. Miller Brewing Co.*, 612 F.3d 651, 657 (7th Cir. 2010); *ITOFCA, Inc. v. MegaTrans Logistics, Inc.*, 235 F.3d 360, 363 (7th Cir. 2000). "The finality rule is only rarely a 'Swiss cheese.'" *India Breweries*, 612 F.3d at 657, quoting *Chang v. Baxter Healthcare Corp.*, 599 F.3d 728, 732 (7th Cir. 2010). But this appeal "managed to wedge through one of its narrowest holes" when Krinos, during oral argument, unequivocally agreed that its counterclaims should be deemed dismissed with prejudice. See *id.* Accordingly, we have jurisdiction over Chessie's appeal and proceed to the merits.

Chessie raises two questions: whether 49 U.S.C. § 10903 creates a private right of action, and whether it forfeited its negligence per se claim. We agree with Krinos and the district court that 49 U.S.C. § 10903 creates no private right of action. Nothing in the statute's text implies such a right. We also hold that the district court acted within its discretion in refusing to hear Chessie's belated negligence per se claim.

B. *Implied Private Right of Action?*

The Interstate Commerce Commission Termination Act includes 49 U.S.C. § 10903, which regulates the abandonment of railroad lines. Subsection (a) provides that a "rail carrier providing transportation subject to" the Surface Transportation Board's jurisdiction "must file an application … with the Board" if it intends to abandon or discontinue service on "any part of its railroad lines." The statute goes on to list the information that an application must include, whom the rail carrier must notify about the application, and how it must do so.

§ 10903(a)(2) & (a)(3). The statute gives the Board three op-
tions for responding to an application: approval, approval
with modifications or conditions, or denial. § 10903(e). The
applying rail carrier may not abandon the line unless the
Board approves. § 10903(d).

Other statutory sections provide a variety of ways to en-
force the § 10903 approval requirement. If a carrier violates
the requirement, a person injured as a result can file a com-
plaint with the Board or bring a civil action. 49 U.S.C.
§ 11704(b), (c)(1). Or the Board can initiate an investigation it-
self and take "appropriate action to compel compliance."
§ 11701(a). The Board's powers include authority to seek an
injunction and to order payment of money. §§ 11702(1),
11704(c)(2). The Attorney General can also "bring court pro-
ceedings to enforce" the requirement. § 11703.

Chessie believes that the Act, in addition to providing
these explicit remedies, implies another remedy: a right, pos-
sessed by rail carriers, to sue third parties whose wrongful
acts force carriers to abandon lines. On Chessie's reading of
the statute, Krinos violated § 10903 when its dirt rendered
Chessie's tracks inoperable because it forced Chessie to aban-
don the tracks without Board approval. Chessie argues that it
can sue Krinos and recover damages for that violation—not
through § 11704(c)(1), which expressly allows persons injured
by rail carriers' violations to sue, but through a cause of action
in favor of a rail carrier implied by § 10903 itself.

In deciding whether § 10903 or any other federal statute
creates an implied private right of action, our task is to "inter-
pret the statute … to determine whether it displays an intent
to create" both a private right and a private remedy. *Alexander*

*v. Sandoval*, 532 U.S. 275, 286 (2001). "[R]ights-creating" language is "critical" to that analysis. *Id.* at 288, quoting *Cannon v. University of Chicago*, 441 U.S. 677, 690 n.13 (1979). We look for statutory language that "explicitly confer[s] a right directly on a class of persons" including the plaintiff. *Cannon*, 441 U.S. at 690 n.13. That language "must be phrased in terms of the persons benefited." *Gonzaga University v. Doe*, 536 U.S. 273, 274 (2002). "Statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons.'" *Sandoval*, 532 U.S. at 289, quoting *California v. Sierra Club*, 451 U.S. 287, 294 (1981). Examples of such language include: "No person in the United States shall, on the basis of sex, … be subjected to discrimination under any education program … receiving Federal financial assistance," *Cannon*, 441 U.S. at 681–82, quoting 20 U.S.C. § 1681, and "A system established … under section 10803 of this title … shall … have access to all records of [certain patients]," *Indiana Protection & Advocacy Services v. Indiana Family & Social Services Administration*, 603 F.3d 365, 375 (7th Cir. 2010), quoting 42 U.S.C. § 10805(a).

Section 10903 contains no comparable language. Its provisions create obligations on, not rights for, rail carriers and the Surface Transportation Board. A rail carrier "must file an application" with the Board before abandoning a line; it "shall" notify affected groups of the application; the Board "shall" approve or deny the application depending on whether "public convenience and necessity require or permit" the abandonment. There is no unmistakable "focus on any particular class of beneficiaries." The statute only prohibits certain activities and mandates others. See *Sierra Club*, 451 U.S. at 294. Section 10903 thus "reveals no congressional intent to create a private right of action." *Sandoval*, 532 U.S. at 289. Moreover, Chapters

117 and 119 of the same title provide express methods of enforcing § 10903, suggesting "that Congress intended to preclude others." *Id.* at 290.

Chessie does not dispute any of this reasoning that makes it so difficult to find implied rights of action. Instead, it asserts that without an implied right of action, it will have no remedy against Krinos's wrongdoing. That cannot be consistent with congressional intent, Chessie reasons, because Congress wanted to ensure the smooth operation of the interstate railroad network—an operation Krinos has impaired. That argument is unpersuasive for two reasons.

First, if (as here) the statute displays no intent to create a private remedy, "courts may not create one, no matter how desirable that might be as a policy matter." *Sandoval*, 532 U.S. at 286–87. It is not our "duty … to be alert to provide such remedies as are necessary to make effective" Congress's purpose. *Id.* at 287, quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 433 (1964).

Second, as a general matter, rail carriers already have legal remedies against interference with their operations. They are the same remedies available to every property owner whose property is damaged: state-law tort claims. Chessie asserted two such claims. When asked why those remedies are inadequate, Chessie explained that to succeed on its chosen state law claims, it had to have at least an easement to use the spur and side tracks. It apparently does not. Also, Chessie apparently sued the wrong parties because the damage to the tracks was done by the work of an independent contractor whom Chessie did not sue. The district court granted summary judgment on the trespass and negligent claims as a result, and Chessie does not ask us to review those decisions. Chessie's

idiosyncratic problems with its state-law claims do not provide a sound basis for finding an implied right of action, which would use congressional silence to work broad changes in the relationship between federal and state law affecting railroads.

Finally, to support its argument for an implied right of action, Chessie cites court cases and administrative decisions in which the ICC Termination Act has been held to preempt various state laws. See, e.g., *Louisiana & Arkansas Railway Co. v. Bickham*, 602 F. Supp. 383, 384 (M.D. La. 1985) (holding that railroad's servitude could not be extinguished under state law, and enjoining servient estate owner's interference with railroad operation), *aff'd mem.*, 775 F.2d 300 (5th Cir. 1985); *Trustees of the Diocese of Vermont v. State*, 496 A.2d 151, 154 (Vt. 1985) (state courts would not decide whether easement for federally regulated railroad line had been abandoned); *In re Jie Ao*, No. FD 35539, 2012 WL 2047726, at *1–2 (S.T.B. June 6, 2012) (neighbor's state-law claim for adverse possession of railroad right-of-way was preempted by federal law under 49 U.S.C. § 10501(b); state-law claim for non-exclusive prescriptive easement not preempted). Chessie's theory is that claims it might assert under state law to protect its property rights are preempted by federal law, so a federal statute needs to be interpreted as implying an alternative set of remedies for railroads against neighboring property owners.

Chessie exaggerates the scope of federal preemption under 49 U.S.C. § 10501(b), which is not as sweeping as Chessie contends. As the Surface Transportation Board's decision in *Jie Ao* shows, federal law preempts state-law efforts *against railroads* to treat railroad rights-of-way as abandoned or lost

through adverse possession. 2012 WL 2047726, at *3–6. Chessie offers no authority indicating that a railroad's state-law property rights and remedies as *against neighboring property owners* are preempted by federal law. Moreover, preemption and an implied right of action are simply not the same thing. Chessie is not asking us to hold that the Act preempts a state statute or local ordinance or common-law doctrine. It asks us to hold that a section of the Act provides an implied federal right of action against owners of property adjacent to railroads. We see no legal basis to do so.

C.  *Negligence Per Se*

Krinos believes we should affirm summary judgment on Chessie's negligence per se claim for any of three reasons, only the first of which the district court addressed: (1) because Chessie forfeited its argument in the district court; (2) because no excavation occurred to trigger the Illinois statute; and/or (3) because Chessie has no evidence of damages. We agree with the first of those arguments, and so affirm the district court without reaching the other two.

"The Federal Rules of Civil Procedure do not require a plaintiff to plead legal theories." *Vidimos, Inc. v. Laser Lab Ltd.*, 99 F.3d 217, 222 (7th Cir. 1996). Accordingly, when a plaintiff does plead legal theories, it can later alter those theories. *Id.* ("[T]here is no burden on the plaintiff to justify altering its original theory."); *CMFG Life Insurance Co. v. RBS Securities, Inc.*, 799 F.3d 729, 743–44 (7th Cir. 2015) (plaintiff did not inappropriately add new claim during summary judgment briefing when factual basis was alleged in complaint); *Rabé v. United Air Lines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011) (noting that, after reversal of dismissal on pleadings, district court

would have supplemental jurisdiction over claims not articulated, but implicit, in complaint). As a general rule, district courts should not hold plaintiffs to their earlier legal theories unless the changes unfairly harm the defendant or the case's development—for example, by making it "more costly or difficult" to defend the case, or by causing unreasonable delay. *Vidimos*, 99 F.3d at 222; see also *Whitaker v. Milwaukee County*, 772 F.3d 802, 808–09 (7th Cir. 2014) (plaintiff should have been permitted to proceed on new summary judgment theory that recharacterized already-alleged facts and did not offer "any unfair surprise").

This is not the framework that applies when a plaintiff changes its *factual* theory during summary judgment briefing. Plaintiffs do have to raise factual allegations in their complaints. An attempt to alter the factual basis of a claim at summary judgment may amount to an attempt to amend the complaint. *Whitaker*, 772 F.3d at 808, quoting *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996).

The district court dismissed Chessie's claim for two reasons: first because Chessie did not assert negligence per se in its complaint and did not allege that Krinos violated Illinois law, and second because Chessie forfeited the argument by raising it for the first time at summary judgment. We disagree with the first reason because Chessie was not required to plead its legal theories. E.g., *Johnson v. City of Shelby*, 574 U.S. —, —, 135 S. Ct. 346, 346 (2014) (summarily reversing dismissal of action for failure to identify legal theory in complaint); *Title Industry*, 853 F.3d at 880; *Del Marcelle v. Brown County Corp.*, 680 F.3d 887, 909 (7th Cir. 2012) (en banc) (Wood, J., dissenting).

We agree with the court's second rationale, although we must emphasize that the governing legal standards are more nuanced than Krinos acknowledges. It relies, as the district court did, on *Clancy v. Office of Foreign Assets Control*, 559 F.3d 595, 606–07 (7th Cir. 2009), and *Lewis v. School District #70*, 523 F.3d 730, 741 n.6 (7th Cir. 2008). In both cases, this court noted that the plaintiff was arguing on summary judgment a point that had not been raised in the complaint and affirmed the district court's refusal to reach that argument with little further explanation. Krinos infers that the cases applied a bright-line rule: arguments raised for the first time at summary judgment are forfeited, or at least may be treated that way in the district court's discretion.

But *Clancy* and *Lewis* must be understood alongside cases like *Whitaker* and *Vidimos*, which both held that district courts erred by refusing to consider new theories raised in opposition to summary judgment. See *Whitaker*, 772 F.3d at 808–09; *Vidimos*, 99 F.3d at 222. Those cases explain the framework more thoroughly. When a new argument is made in summary judgment briefing, the correct first step is to consider whether it changes the complaint's factual theory, or just the legal theories plaintiff has pursued so far. *Whitaker*, 772 F.3d at 808. In the former situation, the plaintiff may be attempting in effect to amend its complaint, and the district court has discretion to deny the *de facto* amendment and to refuse to consider the new factual claims. *Conner v. Illinois Dep't of Natural Resources*, 413 F.3d 675, 679 (7th Cir. 2005); *Shanahan*, 82 F.3d at 781. In the latter, the court should consider the consequences of allowing the plaintiff's new theory. If it would, for example, "cause unreasonable delay," or make it "more costly or difficult" to defend the suit, "the district court can and should hold the plaintiff to his original theory." *Vidimos*, 99 F.3d at

222. The district judge who is managing the case is ordinarily in the best position to answer these questions and to exercise sound discretion.

We see no abuse of discretion in the district court's decision to treat Chessie's new theory of negligence per se as forfeited because the new argument changed the complaint's factual theory in an important way. Chessie did not allege facts supporting a negligence per se claim in its complaint, and it had not otherwise signaled its pursuit of this theory until after discovery had closed and the parties were briefing cross-motions for summary judgment.

To recover on a negligence per se claim in Illinois, the plaintiff must show that the defendant violated a statute and that the violation proximately caused an injury "of the type the statute or ordinance was intended to protect against." *Noyola v. Board of Education of the City of Chicago*, 688 N.E.2d 81, 85 (Ill. 1997). Chessie's negligence per se theory is based on the Illinois Adjacent Landowner Excavation Protection Act, a statute that emphasizes a landowner's right to the "lateral and subjacent support which his land receives from the adjoining land." 765 Ill. Comp. Stat. 140/1. Every provision of the Act focuses on providing that support or preventing damage from its loss. For example, on receiving notice of an adjacent excavation, a landowner is entitled either to time to protect his property or to have the excavator protect it. 140/1(1), (5). Which alternative the owner is entitled to depends on how deep the excavation is. *Id.* Another provision requires excavators to take care to "sustain the adjoining land." 140/1(3).

Chessie alleged an excavation, and it alleged a lack of notice. But the injury its complaint describes has nothing to do

with a loss of "lateral and subjacent support." 140/1. The complaint makes clear that Chessie does not claim it was injured because Krinos *removed* dirt from the ground; Chessie claims it was injured because Krinos *dumped* dirt on its tracks. A claim that it was injured by the excavation would not be merely "an alternative legal characterization" of the complaint's facts; it would be a new fact. See *Whitaker*, 772 F.3d at 808–09. Introduction of this new factual and legal theory at such a late stage of the case would have led inevitably to further discovery, delay, and expense. While a district judge may decide that justice calls for tolerance of such consequences, the judge also has discretion to deny such a late change in the shape and scope of a civil case.

Accordingly, the judgment of the district court is AFFIRMED.

POSNER, *Circuit Judge*, dissenting. The plaintiff appeals from the dismissal by the district judge of a suit in which it charged a group of related companies that for simplicity I'll refer to just as "Krinos" with trespass, negligence, and violation of 49 U.S.C. § 10903. There was no trial.

The plaintiff is a tiny railroad in Illinois, authorized by federal railroad authorities to operate as a common carrier on a short stretch of railroad track (1.006 miles long) in Melrose Park that it acquired in 2013 but has not yet used. It also owns a siding connected to its track—a railroad siding or spur track is a short section of track used either to store some of the railroad's rolling stock or to enable a train using the main track to get out of the way of another train using that track, by switching to the siding.

The plaintiff's siding crosses land owned by Krinos, and the plaintiff argues that the construction of a sewer line by Krinos on that land buried the plaintiff's siding under landfill material, rendering the siding unusable. Other construction activity by Krinos, according to the plaintiff, resulted in depositing landfill on the plaintiff's main track, rendering that track unusable as well. Krinos tried to remove the landfill, but according to the plaintiff ended up burying the plaintiff's siding even deeper.

49 U.S.C. § 10903 authorizes abandonment and discontinuance of rail transportation over a railroad line only if the line's owner obtains the permission of the STB (Surface Transportation Board), the federal agency that succeeded the venerable Interstate Commerce Commission. The plaintiff argues that by disrupting its use of its track, Krinos has caused an "unauthorized adverse abandonment" of the track in violation of section 10903. Although the district judge rejected the claim, he did so on the questionable ground that the statute does not create a private right of action. I don't see the sense of that. Railroad track can't be abandoned without the permission of the STB, but no one is seeking that permission; Krinos is gratuitously interfering with the plaintiff's

use of its own property indeed trying to force abandonment of the property, which surely violates section 10903, and who is there but the plaintiff to enforce the statute in a case such as this? The STB has made clear, moreover, that an adverse-possession claim (one plausible characterization of the motive for Krinos's trespass on the plaintiff's property) to land within a railroad's right-of-way is preempted because the seizure of such property could interfere with possible future railroad usage. *Jie Ao and Xin Zhou—Petition for Declaratory Order*, 2012 WL 2047726 (STB June 6, 2012).

So instead of affirming the district court, we should reverse and remand.