In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 17-3487

PAUL CHAIM SHLOMO FISCHER, *et al.*,

*Plaintiffs-Appellants*,

*v.*

MAGYAR ÁLLAMVASUTAK ZRT.,

*Defendant-Appellee.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 10 C 868 — **Samuel Der-Yeghiayan**, *Judge.*

_____

ARGUED MAY 23, 2018 — DECIDED JUNE 13, 2018

_____

Before WOOD, *Chief Judge*, and BAUER and SCUDDER, *Circuit Judges*.

SCUDDER, *Circuit Judge.* Paul Chaim Shlomo Fischer appeals an order denying a motion to reopen an action he and other Hungarian Jews brought against an instrumentality of the Hungarian government, the national railway, under an exception to the Foreign Sovereign Immunities Act for harms suffered during the Holocaust. Although Fischer seeks our review of the district court's order, he is not the individual the

district court treated as filing the motion leading to the order. The district court read the motion as coming from Iren Gittel Kellner, a putative member of the class Fischer sought to have certified in the action previously ordered dismissed without prejudice to permit an exhaustion of any remedies available in Hungary. Indeed, the district court denied the motion on this precise and limited basis—Kellner's lack of "standing" to seek to reopen an action in which a class never was certified. In these circumstances, this court, too, faces an insurmountable barrier: we lack authority to consider an appeal from a party not subject to the order sought to be challenged.

## I

This litigation began in 2010, and now makes its third visit to our court. In 2012, the court issued multiple opinions addressing aspects of claims that Hungarian survivors of the Holocaust brought in the Northern District of Illinois against several Hungarian banks and the Hungarian national railway. Relevant here is the class-action complaint Fischer and twenty other individuals filed against the Hungarian national railway. Fischer alleged that in 1944 the railway, known as Magyar Államvasutak Zrt., transported him and up to 500,000 other Jews from Hungary to Auschwitz and other concentration camps. In terms jarring and difficult to read, Fischer's complaint recounted allegations of horrific personal harm and losses of valuable and treasured personal possessions experienced by Hungarian Jews forcibly transported to concentration camps by the national railway.

In 2012, the court concluded that the plaintiffs, including Fischer, had neither exhausted remedies that may be available

in Hungary nor established that the national railway is engaged in commercial activity in the United States—requirements necessary to support the district court's exercise of subject matter jurisdiction under the FSIA's expropriation exception. Our 2012 opinion explained these requirements in much detail. See *Abelesz v. Magyar Nemzeti Bank*, 692 F.3d 661, 671, 678–86, 694–95 (7th Cir. 2012).

This court reached the same conclusion three years later, holding that the district court (on remand from our first opinion) committed no error in determining that the plaintiffs had failed to offer a compelling reason for foregoing the pursuit of remedies in Hungary. See *Fischer v. Magyar Államvasutak Zrt.*, 777 F.3d 847, 859–66 (7th Cir. 2015). Our 2015 opinion also took care to qualify the bounds of the exhaustion mandate: "If plaintiffs attempt to bring suit in Hungary and are blocked arbitrarily or unreasonably, United States courts could once again be open to these claims against the national railway and bank." *Id.* at 865–66.

In February 2016, Iren Gittel Kellner, a member of the putative class defined in the amended complaint, filed her own complaint against the Hungarian national railway in Budapest's Capital Regional Court. She sought to recover for losses of personal property, including religious articles, currency and clothing, and family photographs, as well as for other harm (resulting from the intentional infliction of emotional distress and false imprisonment) experienced while traveling to Auschwitz in an overcrowded national railcar with her father, mother, and eight siblings.

In October 2016, the Hungarian court issued a written decision dismissing Kellner's case. The court determined that

Hungarian law required Kellner to support her claim to re-
cover for any losses of personal property with evidence inde-
pendent of her own testimony (for example, documentary ev-
idence of some kind). As for Kellner's claim for damages for
personal injuries, the Hungarian court concluded that any
Holocaust-related claim for noneconomic damages based
upon events alleged to have occurred before March 1978 was
not cognizable under the applicable provision of the Hungar-
ian Civil Code.

What transpired next gave rise to this appeal. In June 2017,
the district court received a three-page motion styled "Motion
to Reinstate." While purportedly brought by the "Plaintiff,"
the motion sought reinstatement of the previously dismissed
amended complaint on the basis of "class member" Kellner's
efforts to exhaust remedies in Hungary. Those efforts, the mo-
tion urged, demonstrated that "Ms. Kellner's efforts on behalf
of herself and other plaintiffs herein, to obtain remedies be-
fore Hungarian courts have been 'frustrated unreasonably or
arbitrarily,'" within the meaning of the standard articulated
in our 2015 opinion. See *Fischer*, 777 F.3d at 852.

The district court treated the motion as filed by Kellner
and issued a summary order declining to reinstate the com-
plaint. The court's reasoning was clear and limited:

> [A]lthough there was a proposed class in this case and
> Kellner may have been a putative class member,
> Kellner is not a "class member" as she claims in her
> motion. No class was certified in this case. Kellner was
> not and is not a named party in this case and lacks any
> standing to reopen this case.

Neither party to the proceeding below asked the district court to reconsider its order. Nobody, for instance, asked the district court to treat the motion to reinstate as being filed not by Kellner (as a putative class member), but instead by Fischer (as a named plaintiff). Such a request would have been reasonable, as the motion to reinstate could have been viewed as coming from Fischer. Regardless, the record is clear that the district court, right or wrong, treated the motion as coming from Kellner, and Fischer did not seek reconsideration of that decision. See *Dietz v. Bouldin*, 136 S. Ct. 1885, 1891–92 (2016) (explaining that "the Court has recognized that a district court ordinarily has the power to modify or rescind its orders at any point prior to final judgment in a civil case").

Foregoing a path of reconsideration, Fischer—not Kellner—then chose to notice this appeal and seek our review of the district court's order. Briefing ensued with Fischer and the Hungarian national railway focused, first, on whether the district court properly found that Kellner filed the motion and, second, whether Kellner experienced any unreasonable or arbitrary frustration of her attempt to pursue remedies in Hungary. Concerned that appellate jurisdiction may be lacking, we then sought supplemental briefing on whether the district court had entered a final decision within the meaning of 28 U.S.C. § 1291 and, more specifically, whether the district court's order denying the motion to reinstate constituted a "clear legal bar" to the revival of the claims brought against the Hungarian national railway. *Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 856 (7th Cir. 2017).

## II

We lack authority to consider Fischer's appeal. The district court treated the motion to reinstate as coming solely from

Kellner. Yet it is Fischer who seeks our review. Fischer, how-ever, has suffered no "adverse effect" from the denial of the motion to reinstate on the ground that Kellner lacked stand-ing, so he cannot appeal the basis for that decision. *Wachovia Securities, LLC v. Loop Corp.*, 726 F.3d 899, 907 (7th Cir. 2013) (quoting *Transamerica Ins. Co. v. South*, 125 F.3d 392, 396 (7th Cir. 1997)); see also *Cabral v. City of Evansville, Ind.*, 759 F.3d 639, 643 (7th Cir. 2014); *Raley v. Hyundai Motor Co.*, 642 F.3d 1271, 1274 (10th Cir. 2011) ("After all, it is usually only parties who are sufficiently aggrieved by a district court's decision that they possess Article III and prudential standing to be able to pursue an appeal of it."). Nothing changes if we view the appeal before us as being filed not just by Fischer but by all plaintiffs named in the amended complaint, for the district court's order applies only to Kellner who was not a named plaintiff.

We also know of no authority permitting us to interchange or modify the parties to an appeal without regard to the standards for substitution in Federal Rule of Appellate Proce-dure 43. And, while sympathetic to Fischer's urgency to pros-ecute what all agree are very serious claims arising out of one of the worst atrocities in the history of humankind, we remain a court of limited jurisdiction. We must ensure our authority over a specific case or controversy covers the party seeking our review. Here that essential requirement is lacking.

Even if we were to view the motion to reinstate as having come from Fischer, appellate jurisdiction is still missing in other necessary dimensions. The essence of Fischer's appeal is a plea to us to hold—on the basis of Kellner's experience attempting to exhaust remedies in Hungary—that any further attempts by Fischer or another named plaintiff to exhaust

would be futile and thus unnecessary to a renewed effort to establish subject matter jurisdiction (under FSIA's expropriation exception) in the district court over the claims in the amended complaint. Nary a word in the district court's brief dismissal order addresses these broader and more complex issues of exhaustion and subject matter jurisdiction, however, and we cannot do so in the first instance. See *Houben v. Telular Corp.*, 231 F.3d 1066, 1070 (7th Cir. 2000) (recognizing the general proposition that "[n]ormally the failure to rule on an issue would deprive this court of jurisdiction, as we have jurisdiction only over final judgments of the district courts, 28 U.S.C. § 1291, which means that all issues in the litigation must be resolved").

By its terms, the district court's order denying Kellner's motion to reinstate contains no reference to Fischer or, for that matter, any other plaintiff named in the amended complaint. In no way did the district court's summary order close the courthouse door on Fischer or another named plaintiff. To put the observation in jurisdictional terms, in no way has finality been reached within the meaning of 28 U.S.C. § 1291 and Federal Rule of Civil Procedure 54 on the claims advanced in the amended complaint. There is no "clear legal bar to [any] claim's revival" in the district court. *Chessie Logistics Co.*, 867 F.3d at 856.

While this lack of finality precludes our review, it serves in these circumstances to afford Fischer and the named plaintiffs (and any additional party properly joined under Federal Rule of Civil Procedure 20) flexibility to determine their next step. Our exchange during oral argument made plain that we see nothing preventing Fischer or another named plaintiff

from themselves pursuing remedies in Hungary or instead returning to the district court by filing a new complaint on the basis that Kellner's experience pursuing relief in Hungary applies and extends to others so as to excuse any further individualized steps to exhaust remedies. For its part, the Hungarian national railway likewise will be free to respond to and oppose any such steps taken by a named (or newly added) plaintiff.

In the end, it will be up to the district court to determine whether the plaintiffs have made the showing requisite to establish subject matter jurisdiction. Informed by our two prior opinions and resolution here, the district court, perhaps among other issues, will need to consider the adequacy of efforts to exhaust any remedies in Hungary, including whether one individual's efforts to exhaust can satisfy another's obligation, as well as whether the commercial-nexus requirement of the expropriation exception to the FSIA discussed but left unresolved by our 2012 opinion has been demonstrated.

We therefore DISMISS Fischer's appeal for lack of jurisdiction.