**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 30, 2019[*]
Decided July 30, 2019

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 19-1440

| | |
|---|---|
| EBONY APPLETON, | Appeal from the United States District |
|     *Plaintiff-Appellant*, | Court for the Northern District of Indiana, |
| | Hammond Division. |
|     *v.* | |
| | No. 2:16-cv-448 |
| CITY OF GARY, INDIANA, | |
|     *Defendant-Appellee*. | Andrew P. Rodovich, |
| | *Magistrate Judge*. |

## O R D E R

The City of Gary, Indiana, fired Ebony Appleton from her job at the Parks Department after the City recorded numerous instances of her poor attendance and insubordination. In this employment-discrimination suit, Appleton alleges that she was subjected to sex discrimination while on the job and then fired in retaliation for complaining about it. Because the district court correctly entered summary judgment in favor of the City, we affirm the judgment.

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

We review summary judgment de novo, viewing the evidence in the light most favorable to the nonmovant and drawing all reasonable inferences in her favor. *Scheidler v. Indiana*, 914 F.3d 535, 540 (7th Cir. 2019). Appleton worked for the Parks Department for two years in different part-time positions. The city promoted her to site manager in the Youth Services Bureau in 2015. Appleton asserts that the City later cut her hours; the City says Appleton was never guaranteed a set number of hours per week.

Appleton's supervisors documented numerous policy violations, such as refusing to adhere to a regular work schedule and bringing her children to work after being told not to. In February 2016, her supervisor, Marcus Hare, suspended her for a day because she failed to follow an order. A few months later, Appleton requested a transfer, saying that she had "a few problems" and "[did] not want any more occurrences." A human resources representative arranged a meeting between Appleton and the employees she named in her transfer request. There, Appleton said that these co-workers did not respect her, giving examples of them questioning and mocking her. The other employees apologized, and the meeting ended amicably. The representative told Appleton that a transfer was not possible but determined that, moving forward, Appleton would report to Hare's supervisor instead of Hare.

But in May 2016, after an encounter with Hare, Appleton filed an internal harassment complaint. She reported that "Hare walked fastly in my office and charged toward me cornering me clapping his hands at me yelling and screaming … stating that I need to shut my mouth." After investigating the complaint, a human resources representative concluded that the argument stemmed from Appleton's disregard for workplace rules and found no evidence of sexual harassment or discrimination. Nonetheless, the representative instructed Hare to have no more contact with Appleton.

The day after the incident with Hare, Appleton filed a charge of discrimination with the Gary Human Relations Commission. She alleged that she had been "the recipient of harassment" because, among other reasons, her job title and duties "consistently changed," the payroll clerk was rude to her, and Hare had unfairly reprimanded her. On the last point, Appleton wrote, "Hare does not speak or treat the male employees under his supervision in the same manner." The Commission investigated but determined that there was no evidence that any employees' actions were motivated by Appleton's sex or that male employees were treated differently.

The City promoted Appleton and increased her pay in September 2016, but she continued to have trouble at work. Her supervisors reported that, among other

problems, Appleton did not provide sufficient advance notice of absences, failed to return to work after breaks, refused to fill out her time card or reported her time inaccurately, and continued to bring her children to work. The payroll clerk in charge of documenting employees' time reported that Appleton was absent or late to work nine times in thirteen days and left early on four of the days she came in.

After reviewing these issues, the City fired Appleton. It explained that her termination was based on her violation of numerous personnel rules: (1) failing to report "to work punctually as scheduled," (2) failing to notify her "supervisor in advance when" she would be absent, (3) acting insubordinately or refusing to carry out orders, (4) walking off the job, and (5) failing to punch her time clock daily. The discharge took place four months after Appleton had filed her discrimination charge. After her termination, Appleton filed a second charge, this time saying, "I believe I have been retaliated against because I filed a discrimination charge."

Appleton, proceeding pro se, sued the City under Title VII of the Civil Rights Act of 1964; she alleged that the City's employees had harassed her, discriminated against her because she is a woman, and retaliated against her for complaining about that discrimination. *See* 42 U.S.C. § 2000e *et seq.* The City moved to dismiss Appleton's sexual-harassment and retaliation claims. In ruling on the motion, the magistrate judge, proceeding by consent, *see* 28 U.S.C. § 636(c), accepted Appleton's assertion in her response to the motion that "sexual harassment … is not filed [in] the lawsuit." But the court otherwise denied the City's motion, and the retaliation and discrimination claims proceeded to discovery.

The City then moved for summary judgment, presenting evidence about Appleton's workplace difficulties, her disciplinary record, and its reasons for firing her. In responding, Appleton revived her allegations of "sexual harassment," but the City moved to strike statements pertaining to this claim (among other things). The district court granted the City's motion for summary judgment. It concluded that Appleton had offered no evidence that the City treated her differently because of her sex or that it fired her in retaliation for the discrimination charge. The district court did not substantively address the claim of sexual harassment; it agreed with the City that Appleton had expressly waived that claim and therefore granted the motion to strike.

On appeal, Appleton contests the district court's decision to grant the City's motion to strike as it applies to her sexual-harassment claim. She states in her appellate brief that her withdrawal of the claim "was based on Mrs. Appleton not knowing all

things that are covered under sexual harassment." The time to make this argument was in opposition to the motion to strike; Appleton, however, never responded to that motion to explain to the district court that she had not intended to waive that theory of recovery. She waived her argument by failing to raise it in the district court. *See Homoky v. Ogden*, 816 F.3d 448, 455 (7th Cir. 2016).

In any case, Appleton could not demonstrate that the district court erred by striking her arguments and evidence about sexual harassment. It is true that as a general rule, plaintiffs do not have to plead legal theories in their complaints, and therefore, at summary judgment, "district courts should not hold plaintiffs to their earlier legal theories." *Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 859 (7th Cir. 2017). But this is not a case in which Appleton waited to raise a legal theory; she expressly disclaimed it, only to later raise it. This change would have "unfairly harm[ed] the defendant or the case's development"; allowing Appleton's flip-flop would make defending the case "more costly or difficult," and unfairly disadvantage the City. *See id.*

As to her discrimination claim, Appleton appears to argue that instances of mistreatment by city employees reflected unlawful sex discrimination. In reviewing the district court's entry of summary judgment on this claim, we consider whether the evidence as a whole would permit a reasonable fact-finder to conclude that the City subjected Appleton to an adverse employment action based on her sex. *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017); *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765–66 (7th Cir. 2016).

We first assess whether Appleton suffered an adverse employment action: a decision "that significantly alters the terms and conditions of the employee's job." *Hancock v. Potter*, 531 F.3d 474, 478 (7th Cir. 2008). With respect to her sex-discrimination claim, Appleton points to Hare's outburst and other negative interactions she had with him and her coworkers as the adverse actions. But none rises above "[g]eneral hostility," unpleasantness, or inter-employee disputes, which do not constitute adverse actions. *Id.* There is "a significant gap" between the conduct Appleton points to, "which was fundamentally personal," and discrimination based on her sex. *Id.* at 480.

Appleton's one-day suspension and her reduction in hours could constitute adverse employment actions, as the district court observed. *See Hill v. Potter*, 625 F.3d 998, 1001 (7th Cir. 2010) ("[A] reduction in hours could be an adverse action giving rise to liability."); *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 647 (7th Cir. 2005) ("[A] suspension

without pay … would constitute an adverse employment action."). But Appleton does not argue, nor provide evidence, that her sex was a "motivating factor" for these actions. Hare attested that he suspended Appleton because she did not follow an order (a well-documented issue). And even Appleton states that her supervisors cut her hours because they "did not care for her," not because of her sex.

Finally, to survive summary judgment on her retaliation claim, Appleton needed to furnish sufficient evidence to permit a reasonable fact finder to conclude that a retaliatory motive was the but-for cause of an adverse employment action. *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016). With respect to this issue, Appleton identifies a qualifying adverse employment action: The City fired her after she had filed an administrative charge of discrimination.

Yet, as the district court explained, the timing of events—the only evidence that Appleton offers—does not give rise to an inference that Appleton's charge motivated the City to fire her. Typically, only a few days may pass between the protected activity and the adverse action "[f]or an inference of causation to be drawn solely on the basis of a suspicious-timing argument." *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012); *see Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 919 (7th Cir. 2000) (saying three-month gap between protected activity and adverse action insufficient to show causality). Here, however, four months passed between Appleton's charge and her termination. Further, "significant intervening events" break any potential causal connection, *Kidwell*, 679 F.3d at 967; in the interim, Appleton failed to report to work when scheduled, left early, and refused to sign required paperwork. Without evidence of a causal link, Appleton cannot prove retaliation.

AFFIRMED